Oral argument, not to exceed 15 minutes per side, Stephen Jagger, 14 pounds. Good morning. My name is Steve Jagger and I represent the appellant Sam Droganes. I would like to reserve three minutes for rebuttal. You may, and you may proceed. During the sentencing hearing, the district judge stated, if I had to do this case all over again, I may have done it differently. Mr. Droganes is here today to ask you to grant that request for the following reasons. First, the court erred by failing to enforce his own orders under the power of inherent authority. Second, the court erred by finding sovereign immunity precluded sanctions against the government. And third, the court incorrectly determined the scope of the forfeiture order. Turning to the first issue, the district court ordered the government to return or compensate Mr. Droganes for his lawful property on at least three different occasions throughout this case. However, such orders were never complied with by the government, nor were they ever enforced by the court. The Supreme Court has several purposes for inherent authority, among which include the preservation of judicial integrity and to maintain the authority and dignity of the court. The district court in this case has marred the integrity and dignity of the court. In fact, this case is similar to a parent creating rules for a child and then failing to enforce those rules. Well, here, doesn't the government have to consent with the type of suit that you contemplate or the type of imposition of monetary penalty? Isn't there immunity from suit here? Well, I don't believe that there is. I believe there's two separate issues. First of all, there's whether or not the court could enforce his orders, and then there's the issue of whether or not sanctions can be imposed. I don't necessarily think that they have to be lumped together. Even if they are lumped together, I think you can find circuits throughout the country that have said that in cases such as this, the government can in fact still be sanctioned. For instance, the Fifth Circuit has held, as well as the Eighth Circuit... In Horn, doesn't the First Circuit make fairly clear that sovereign immunity trumps the court's inherent authority, Mr. Jager? I don't believe that it does. I believe if you look at what the court in Horn states, they actually state in their opinion that they will consider unleashing the supervisory power in criminal cases when confronted with extreme conduct. They left open the possibility of sanctions, but they found that sanctions weren't appropriate under the facts of that case. Also, if you return back to the Fifth and the Eighth Circuit, they both say that Mr. Drogon should be entitled to be put in a position that he would have been had the court complied with, or had the government complied with the court's orders from the beginning. So that would include compensation for the items destroyed, as well as attorney fees and costs for the ongoing attempts to try to recover that. What kind of bright... Since this is a case of first impression, I believe, in this circuit, what kind of bright-line rule would you propose that we adopt? You don't seem to reject Horn, and you don't seem to embrace Maxim. Where do you want us to be? I want this court to say that when there is a clear finding of bad faith by the district court, when there's complete, clear orders by the district court for the government to do something, and in that bad faith, the government fails to do it, that sanctions can be imposed upon the court, or upon the government by the court, in those circumstances. I think that several other circuits throughout the country do that. Even two weeks ago, the Fourth Circuit just found that when a court sanctions the government in a criminal case for its failure to obey court orders, which is what we have here, it must use the least severe sanction possible to adequately punish the government and secure future compliance. Obviously, this ruling in this case does not do either of those. It doesn't reimburse Mr. Drogans, and it certainly doesn't secure any future compliance by the government. What about a step short of that? Why don't we just leave it to Mr. Drogans to file a Federal Tort Claims Act? Why can't he do that, instead of us having to get involved in this caulkmire, whether it's sovereign immunity or Trump's? Part of the problem is, I think it's unclear as to what the claim would be, because until two days ago, we didn't even have the list of what items were actually returned to Mr. Drogans. Now, he can finally start the process of going through that list and comparing it to what he has supposedly been given back by the government, but until he does that, we wouldn't even know what claim to pursue under the Federal Tort Claims Act. You said just two days ago, you received some list? Is that part of the record? No, we just got it two days ago, and we are still going through it. Is this from the green list, the orange list, the red list? That's a good question. We don't know yet. It's a 50-some page document that we literally got two days ago that Mr. Drogans needs the time to go through and compare to what was actually returned and which list it came from. Let's not forget that this case became so convoluted by the government that they had to produce a list of lists just to keep track of all the different things that they were actually doing. I think the government kind of even lost track throughout this case as to what was legal, what was illegal, and part of that reflects back on, I don't want to say incompetence, but it has to be something. If the government can't figure out which items should be returned and which items shouldn't be returned, then how can they say that Mr. Drogans should have known from the beginning? I wanted to go back to the issue of sovereign immunity because in its brief, the government cites the Appropriations Clause, Article 1. In the Richmond case, the Supreme Court stated that the payment of money from the Treasury must be authorized by a statute. Can you point us to a statute that authorizes the payments of the government's funds for sanctions in a criminal case? What do we look to that relief? I understand you're talking about inherent power, but in light of this express wording, is there some other statute that we should look to for this relief? I don't necessarily think that there's an express statute that's on point here, but I do think that Article 3 of the Constitution, by the very nature of the court's existence, has to have some sort of impact on this court's ruling. Without the ability for the court to enforce some sort of order against the government, then it seems that the scales of justice have basically tipped perpetually in favor of the government. But one such way to have that enforcement is, I believe, the process that Judge Marbley alluded to earlier, and that is an order that would emanate from a judgment in the Federal Tort Claims Proceedings. That is one way. However, again, in this case, it's been so confused by the government since the beginning that we wouldn't have any kind of firm ground to move forward under the Federal Torts Claim Act. And to return to your question about whether there's any explicit statute, let's not forget that in this case, in March of 2009, the government offered reimbursement to Mr. Drogens for the wholesale price of the consumer fireworks. They then later claimed, OK, well, we're immune, so we're not going to do that. But even after claiming immunity, they again returned in January of 2011 and said to Mr. Drogens, well, we'll pay you 50 percent of the value of fireworks that we took. So arguably, you could say by that offer, they've waived their immunity or at least agreed to compensate him for those things. And again, I think you can draw the line between the sanctions issue, which in our eyes would cover the attorney fees and costs, from the ability of the court to just enforce the order that it set forth against the government three times. Well, we spent some time on the sanctions issue and sovereign immunity. The government also argues in terms of the forfeiture order that there are several hurdles that you can't get over here. The government argues appellate waiver. The government argues that the magistrate judge issued a report and recommendation. Mr. Drogens only had one sort of very limited narrow objection to that, and therefore he's waived, objecting to all kinds of other things. And then you've got the plea agreement, in which he agreed that the government could make unilaterally certain determinations about classifications of these various fireworks on these different lists. Correct. You know, I think if you look at the standard, the standard is that a plea agreement has to be knowing, intelligent, and voluntary. In this case, it's difficult for us to understand how Mr. Drogens can be held to the standard of knowingly agreeing to forfeit something that the government, at the time of the plea, didn't even know what he was forfeiting. So there's no way that, as of the date of the plea... Didn't he know that he was forfeiting illegal fireworks? He knew that he was forfeiting the 13 original items that were a result of the undercover purchase that started this entire case rolling forward. Yeah, but the district court asked Mr. Drogens at the rearrangement whether he understood that if, quote, something is determined by ATF to have been a display firework, that this plea agreement requires that you forfeit any interest you have in those items. And Mr. Drogens responded, yes, sir, I do. Right, and the court says if something has been determined to be a display firework. So to me, that would only cover up until the April plea agreement, not anything that happened after that fact. And most of the items in this case, again, were most recently, within the last probably six months, conclusively decided as to whether or not they were legal by the government. So how could he have knowingly agreed to anything that occurred after that April date? But wasn't the import of his agreement that I, the defendant, am agreeing to forfeit fireworks that you guys determined to be illegal, and that's the display fireworks. So everybody understood at that time that all of these fireworks hadn't been sorted out. Everyone knew that there were discrete lists. And so he had to have understood, or implicit in that understanding, it would appear to me, would be that if it's a display firework, irrespective of when it's found, I mean, when it's found in that sorting out process, it's still covered by this waiver. Well, I don't believe it is. And actually, the district court didn't believe that it was either. The district court actually said several times on the record that the scope of the forfeiture was a separate matter that they were going to have to take up at a later date. And he flat out said, I'm not sure how we're going to deal with that yet. We've got to remember, there was 800,000 pounds of fireworks taken in this case. The district court found that because of the enormity of it, it was clear from the record that the scope of the forfeiture order and the testing methods used did not fall underneath the waiver. So he could waive with respect to display fireworks that were determined at that time to have been display fireworks. But if subsequent display fireworks are determined, then they are covered by the waiver. He can get those back. That's our position, yeah. Not display fireworks, consumer fireworks. Yeah, I'm just talking about display fireworks. No, no, display fireworks aren't the issue. Consumer fireworks are the issue. The government stored all of these fireworks, and in their storage, many of them became damaged or destroyed entirely to the point that they wouldn't be able to be used. So those are the fireworks primarily that should have been returned at some point. Otherwise, it would be an unlawful taking of this property. So what does the record reflect that has been returned so far? Is it something like 270,000 pounds of fireworks? Well, I believe, and again, I recognize I'm out of time. We just got the inventory back, and it's hard for us to know the exact poundage. But they did reflect that they had returned somewhere in the neighborhood of 200 and some odd thousand. And these are the consumer fireworks? Those are some of the consumer fireworks. Some of the consumer fireworks were destroyed. And none of that gets into the whole classification issue that we think that their testing process was incorrectly done. So what was deemed consumer versus— But you never really challenged the testing process in any way. You haven't suggested any other testing process, right? We did. We actually suggested that the CPSC standards that govern consumer products, including consumer fireworks, should have applied in this case because those standards are, first of all, correctly over consumer products, and second of all, do a more fair assessment in terms of weighing and how they go about their testing procedure to decide that. Let's hear—your time has expired, and we'll give you a little bit of extra time, but you'll have your full rebuttal. Let's hear from the government. May it please the court, I'm Candace Hill. I represent the United States in this case, and it is confusing, and I acknowledge that it's confusing, so I brought a prop with me. And like the fireworks that were seized in Mr. Drogan's case, I've marked them with a brown paper bag because until they are looked at and determined by ATF to be display or consumer fireworks, you can't tell from the labeling that was on those fireworks. What has taken ATF so long, Ms. Hill? Well, the length of the case is directly attributable to the huge quantity of illegal fireworks that were seized in this case. But it's taken them over two years to sort these fireworks out, hasn't it? It started, Your Honor, in 2007 when they were first seized. The original search warrant allowed them to search for and seize illegal fireworks that were in Mr. Drogan's warehouse. That turned out to be only approximately one half of what ATF learned were en route to Mr. Drogan's from China. So, yes, there were hundreds of thousands of pounds of fireworks. But they've been at the place in Nebraska since 07? They were moved to Nebraska in 07, Your Honor. That's correct. And nobody is trying to suggest that the delays in this case didn't cause problems, but the question of whether there's some legal requirement for ATF to have immediately begun testing those fireworks, there simply is no law to that effect. Does ATF contest that the consumer fireworks are legal and were legally possessed by Mr. Drogan? No, and that's what I'm asking. So ATF is keeping his legal stuff to while it sorts through its case? And, Your Honor, they kept them during the time that they were using them to test. I believe it was October of 2008, about three months after Mr. Drogan was indicted, he moved for return of his legal fireworks. And that's when it became evident that the return or, it hasn't been mentioned, payment for those legal fireworks would be the remedy that he would be entitled to. Under Rule of Criminal Procedure 41G, his only remedy was return, and we acknowledge that this offer to payment made things more complicated. Judge Bunning was seemingly unimpressed with the government's action in this case. As I recall, he believed that the government acted in bad faith. And that is a concern that I have obviously addressed in our brief. There was a lot of mistakes made. There were mistakes made on both sides in this case, and those mistakes did not rise to the level of bad faith. The court, in his rulings, concluded that the government's failure to comply with his orders constituted bad faith. But I made a note when counsel was speaking because he said that the court had failed to enforce its clear orders. Well, with all respect to Judge Bunning, Judge Bunning himself had orders that said you must either return the consumer fireworks, the green fireworks, or pay for them. And that was a mistake compounded in many ways by both parties' belief that that was possible. And I would like to clarify one thing. Here are the green fireworks. And those were determined to be green fireworks when ATF finished their assessment of the fireworks and determined which ones were display fireworks, as demonstrated by the red list. And again, the question of lists and orange lists and green lists is confusing. That decision about whether ATF's determination on these fireworks is correct was just made last year. Once Mr. Drogane objected to ATF's determination of which were display and which were consumer fireworks, it was impossible, or it would have been imprudent, I submit, that ATF would just send back some fireworks without the court making its final determination. To make one thing clear, too, he has his green fireworks back. They were returned to him in 2012 once the court made its decision. He got a bill of lading. He got a shipment of hundreds, I think it was in the order of 262,000 pounds of fireworks. He got a list called a receipt and release from ATF this week. But that is not the return of the fireworks. They were returned over a year ago when the court determined that ATF's determination of what was a consumer and what was a display firework was appropriate. And that gets to the question of whether the district court made any kind of mistake in determining that the display fireworks as determined by ATF were subject to forfeiture. And, of course, too, there's this question of the orange fireworks, and I can briefly discuss that. Mr. Drogane did not object when the magistrate judge said those fireworks on the red list, which had been in the record since 2010, this wasn't some new list. It was produced at least by sentencing, and I believe it was sometime before sentencing, but at the very latest. That red list existed in 2010 in, I think it was in July, I'm sorry, in April when he was sentenced in 2010. The magistrate judge, after two years of litigation, hearing the record, said the red list that the United States produced back in 2010 accurately lists those things which are subject to forfeiture and the preponderance of the evidence put on by the government in this case supports that forfeiture. Mr. Drogane did not object to that finding. He said, I want to be able to test them some more, and Judge Bunning, very correctly, said that doesn't count as an objection because the further testing was simply not feasible in this case. We're too far past that. But the orange list did not exist at that time. And the orange list existed, but the orange list represented those fireworks that had simply never been assessed by anyone for reasons that are not in the record. In some cases. Well, the orange list was not really before the magistrate. The magistrate thought, and the United States thought, and this is, again, part of the issue here, that there was a chance that payment could be made instead of returning the green consumer fireworks, that there could be payment. And in an effort to settle this, having not tested these, the United States also thought, let's just pay him for the orange fireworks as well. Well, the magistrate judge said the orange fireworks, pardon me, that fireworks had to be returned to Mr. Drogane's. And it couldn't be told whether these were display or whether they were consumer fireworks. In June of 2012, last year, it became evident that if the magistrate judge was suggesting these should be returned, that we would be giving back to Mr. Drogane's, who had no license to sell display fireworks, which are explosives, under the criminal laws of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. We couldn't just give him back display fireworks. So in June, he was put on notice that the government was going to have to make an assessment about whether the orange fireworks were consumer fireworks or display. He knew that. He was put on notice of that. In August of 2012, at the oral argument the court heard on the objections to the magistrate judge report, we produced to Mr. Drogane's and to the court a letter and an assessment of the testing or the assessment that had been done between June and August. And the judge accepted that letter, accepted that evidence. There was no objection to the letter or to the evidence. Counsel, I know that there's been a lot of delay in this case, and I know you argue that it's reasonable and your counsel opposite argues that it's unreasonable, but I want to ask a different question that kind of goes back to the sovereign immunity issue. Now, in 1997, the Hyde Amendment at 18 U.S.C. Section 3006A was passed. And that amendment states basically that the court can award a reasonable attorney's fee and other litigation expenses against the United States where the position of the government is, as counsel indicates, vexatious, frivolous, or in bad faith. So what are the sanctions, the type of sanctions other than litigation expense here that can be levied against the government? And doesn't the Hyde Amendment constitute or does the Hyde Amendment constitute an appropriations authority that enables the court to levy sanctions against the United States where the court finds that the actions of the government falls within one of those prohibited areas? Your Honor, the Hyde Amendment is a perfect example of when the law allows sanctions to be imposed against the government, but I believe the position of the United States that's at issue there is the position of whether or not the defendant should be charged with and is ultimately liable criminally for the offense with which he is charged. And I believe the Hyde Amendment specifically is about whether or not an indictment or a criminal charge against a defendant is vexatious or unreasonable. And of course there's no question in this case that it was a reasonable prosecution. It just took a long time to get involved. So yes, that is an example of when Congress has specifically authorized sanctions against the government. There is no such expressed waiver of sovereign immunity for this kind of behavior. So the government can essentially spurn the district court's orders with impunity with no fear of recourse? Absolutely not, Your Honor, because of course... What's the recourse? Well, the recourse is this. In any criminal case, if there had been a clear order that said return those green fireworks, which did not happen. It was return or pay for those green fireworks. If the government failed to abide by that order, the judge has lots of... So this case turns on options. So if they had just said return them, then the government was obligated. But when they said that or pay, that relieved the government of its obligation? It certainly didn't relieve the government of their obligation to explore both of those options. No, there was nothing in that order that said explore the option. It was either or. You either do this or you do that. And again, Your Honor, I understand that... Where was the government vested with discretion? Point to the court. Where in the order the government was vested with discretion? The only thing that the government could do was try to comply... That wasn't my question, counsel. My question was where in the order was the government vested with discretion? You're absolutely correct that there was no discretion. What there was was a legal bar to the payment that the judge thought and the United States thought and the defendants thought was permitted. So if one of the options was invalid, then the government's only alternative was to return them. That's correct, Your Honor. And then the government had all of the fireworks. The government had the authority and the wherewithal to determine which ones were returnable and which ones were not. And they took their time. It took five years. No, sir, it did not take five years. It took from the time they were seized in 2007 until before he was sentenced in 2010 for the government to make that decision. But they didn't send them back. They didn't give them the fireworks back until 2012, I understand. Well, at that point, remember what was happening. But regardless of what was happening, if the seizure occurred in 2007, and I believe you told us that the fireworks went back in 2012, now, I wasn't a math major, but 7 from 12 is 5. I can see that. I think that's five years, yes, Your Honor. But again, the defendant in this case was trying to be paid for those fireworks. He wasn't insisting at that point anymore. That doesn't leave the government its responsibility. I'm a district judge, Ms. Hill. Now, I can't imagine what would have happened if I had been asking politely the government to turn over fireworks. Now, how do we do this? Because I got a feeling that if the shoe were on the other foot, if Drogane had something that the government wanted, if Drogane had some property that he was holding that the government felt was theirs, can you imagine what would happen if Drogane said, well, I'll give it to you in five years? It would be uncomfortable, without question, Your Honor. It would be punitive for Mr. Drogane because you can bring the entire weight of government organs upon him. I want to know what recourse I now have as a district court judge when you act with impunity, not you, Ms. Hill, but when ATF acts with impunity and tells me, we'll get it to you when we do. Well, Judge Marbley, with all due respect, if you as a district court judge said return or pay, and that's what the orders were in this case, and the government believes that it's plausible to pay, it's not in disobedience of the court's order that it took some time for that finally to be determined. There is that other, go ahead, Judge Charles. Well, I was going to say the government didn't pay or return for five years, and the government first said, okay, we'll pay you. We'll pay you full value. Then the government came back and said, well, maybe we'll pay you 50%. And it seems like there was some biddling going on. That's a misrepresentation of the record. Oh, it is? The record in this case shows that the United States moved for destruction of the fireworks because the value, pardon me, the cost of storage exceeded 50% of the legal fireworks. And God knows the cost of storage in this case has been astronomical. It's not that we'll pay you 50% of the value. But even if the value of storage became an issue, in that whole calculus, was there consideration of just returning because Mr. Droganes is willing to store and relieve the government of that expense? But I know the light is on, and I'm just making that comment, but I want to have one final question. So when the court is talking about contempt power, it's twofold, either a fine or jail, and we obviously can't jail the government. So going back to Judge Marbley's questions, if we find contempt, what are we left with here? Well, in a criminal case, for everyone who's tried criminal cases, there are lots of things that can be done in any criminal case. If there was a significant delay that warranted speedy trial relief, if there's a significant delay in discovery that warrants it. But I'm talking about the facts of this case. And that's what exactly we need to come back to. None of those remedies were sought in this case. Mr. Droganes didn't claim that he was denied a speedy trial. In fact, he moved for continuances. He never said, I want that evidence excluded from my case because of discovery violations, because I don't yet have the discovery that I'm entitled to. None of those sanctions were invoked, nor were they considered in this case. But we're talking about the government's actions in the face of a valid court order, where the government's actions in the face of a valid court order, when the judge, when it was finally determined that payment was not an option as a matter of law, that's when it was clear to the ATF that return was the only option. I know my time is up, but I do want to add one thing, and that is the complicating factor of the condition of the green fireworks, of the fireworks that had been, along with red and orange fireworks, subjected to moisture and to exposure that could risk the safety of people who were going to use those as consumers. And that is why, among the reasons, the government was reluctant to return them. But there was no refusal to return them. There was an effort to try and resolve. Did the government come back to the court and say, judge, we're trying to comply with your order, but in examining these fireworks, we found that they have been moist, they're damaged, and we're concerned about public health and safety? That was exactly what we went to the magistrate judge with when these were referred to the magistrate judge, the suggestion that there was a concern. And the original letter that was written on March 11th of 2008 said, we are concerned that the condition of the fireworks makes them unsuitable for putting back into interstate commerce, which was a reference to the public safety as well as the transportation. The United States argued to the magistrate judge that all of the fireworks ought to be destroyed because of the risk that they posed. And that was what, in fact, the magistrate judge rejected, because she rejected the opinion of the agents who had voiced that concern as having been in bad faith. Were all or most of the green list fireworks ultimately returned? They have all been returned to Mr. Drogain's. So this concern about instability of the fireworks and possible danger at some point just was allayed? It was never allayed. That concern is still there, but unfortunately there is absolutely nothing in the law that allows the government to withhold from, in the fireworks explosives law that allows the government to withhold from return to Mr. Drogain's items that may possibly be used to impose that danger. That's one of the things that took a long time in this case to explore some way, and there simply is none. And Mr. Drogain himself has never suggested that they might not pose a danger, but there's simply no basis. I know the time has expired. How did the government eventually get those 270,000 pounds of fireworks back? Because the government's concern was they were too dangerous to transport. Well, they were shipped back in the means that were consistent with the Department of Transportation's shipping requirements, which is with the placarding and with the appropriate separation within the shipping. It was done, and of course the question of shipping and the question of whether they still pose a danger is, or at least a concern for the public safety, is still there, but there's simply no way to withhold. Okay, your time has expired. Could you take 30 seconds now? We've talked about a lot of things. Why does the government prevail in this case? Could you, in 30 seconds, tell us why? What is the basis upon which the government should prevail in this case? This case is a criminal case in which the defendant pled guilty to selling display fireworks, which he had no license to sell. They are explosives. He agreed in his plea agreement that the ATF could determine which display fireworks, and the ATF did that with respect to both the orange and red listed fireworks. This case does not involve anything more than that. At bottom, obviously there's a lot more involved in it. He's gotten back the green fireworks that were not display fireworks, and he has no basis for seeking money sanctions against the United States under the doctrine of sovereign immunity. His efforts to recover money from the United States were through the Federal Tort Claims Act, in which he filed claims with ATF that were the equivalent of administrative claim, and his claims were denied, and that's the only remedy he would be entitled to. Great. Thank you. We've expended a lot of your time here, but there were a lot of questions to be asked, so thank you very much. Mr. Yeager? What's troubling about this case is that we have a businessman who, yes, he pled guilty, but he was without his lawful property for over five years. The economic impact on his business was catastrophic. Had the government just done what the district court ordered it to do when the district court ordered it to do it, the impact on him for the legal stuff that he owned would have been much less. Let's not forget that the report and recommendation that the government focused so much on by the magistrate found that the actions of the government were just short of fraud. They didn't come out and say that it was fraud, but she did find that it was just short of fraud. The magistrate's opinion also, I don't have the little bags up here, but she also ordered that the orange items be returned with the green items, and it was kind of arbitrarily thrown in at the last minute at sentencing when the district court judge said, well, there's really nothing in the record to support how this was determined to be unlawful at this point, but I'm going to assume that you did it the same way that you did everything else and find that, yeah, that's subject to forfeiture. So all the way up until sentencing, it was the impression that the orange items were going to be returned as well, and those are still not returned. Those are still in the government's possession. Another underlying fact in this case is that the ATF really has no jurisdiction over consumer products. They have jurisdiction over explosives. The CPSC is what governs consumer products. So for the ATF to come in and say, okay, well, we have a search warrant for illegal items, they did, but they also took legal ones that they didn't have a search warrant for, and in any other taking by a governmental agency, the conduct in this case would not have been upheld or allowed to continue. The district court would have done something to do it, and Judge Marbley hit right on one of my main points that I wanted to get back to was that, if this was a private litigant doing the same type of conduct, they could have been jailed or fined, and how the court can adequately function if the government is hands-free of any kind of misconduct is really concerning about the Article III functions of the court, and with that, I'll submit for any further questions. Okay. Thank you, Mr. Yeager and Ms. Hill. We certainly appreciate your arguments. You've obviously spent a lot of time together on this case one way or another, and it sounds to me like that's going to continue. Anyway, the case will be submitted, and the other cases that we have for today are on the briefs.